2000 OK 64

**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Bennett A. ABBOTT, Respondent.**

**SCBD No. 4464.**

Supreme Court of Oklahoma.

Sept. 12, 2000.

Loraine Dillinder Farabow, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Complainant.

Charles F. Alden, III, Oklahoma City, Oklahoma, for Respondent.

HODGES, Justice:

¶1 Bennett A. Abbott (Respondent) was admitted to the Oklahoma Bar in 1994. He began working with his father, Rogers Abbott II, in private practice. After about three years, there was not enough business to justify keeping Respondent in the firm. Respondent set out on his own and began sharing office space with friends.

¶2 Richard White is a Tulsa attorney who handles a substantial amount of commercial and retail collections. In February, 1997, White asked Respondent to handle a number of collection cases filed in Oklahoma City and western Oklahoma. White had accepted the cases on a contingent fee basis.

¶3 The agreement between White and Respondent provided that Respondent would retain eighty percent of the contingent fee in each case upon collection of money from the debtor. Respondent was to forward the remaining twenty percent to White. Respondent was to prepare and file all pleadings, handle the court appearances and litigation in the cases, pursue postjudgment collection remedies and prepare status reports on the cases. White would provide the advance costs necessary to file and pursue the actions and would communicate with the clients.

¶4 One year later, White decided to dissolve his business relationship with Respondent due to the slow progress in the cases. White requested that Respondent return the advance costs which had been forwarded in several cases which had not yet been filed. Respondent sent White a check, written from his trust account, in the amount of $1,389.40. Respondent provided no specific information at that time regarding how the funds applied towards any specific cases.

¶ 5 In May, 1998, White asked Respondent to turn over his files to Respondent's father, who was also acting as White's local counsel on several matters. Respondent complied and turned over about thirty files along with another check, written from his trust account, in the amount of $1,122.15, for funds which he owed White. Despite requests to do so, Respondent did not provide White with an accounting for the monies he had received from White, nor was he able to return the remaining funds at that time. It was not until June 17, 1999, that Respondent made a full accounting for those funds.

¶ 6 In January, 1998, Respondent sought medical treatment for depression. He discontinued treatment, however, because he had no insurance. In May, he quit practicing law and closed his business. He began working odd jobs. About this time, Respondent sought the help of his father who is a CPA in straightening out the accounts with White.

¶ 7 Respondent's failure to provide a prompt accounting of the funds advanced by White's office was due primarily to his neglect in keeping proper records of his trust and business accounts. Respondent's negligent record keeping was due, in part, to his lack of prior experience in handling trust and business accounts and due to his general lack of familiarity with practicing law on his own. Checks were written from Respondent's trust account simply made payable to "Bennet Abbott" or were written out for "cash" without any further notation or case information. Respondent, through his negligence, even wrote a check for office supplies from the trust account. Respondent also made withdrawals from the trust account using counter checks or withdrawal slips without noting any case or client information.

¶ 8 Further, although Respondent kept itemized financial records in each individual case file, he did not keep an overall ledger for his trust or business accounts. As a result, those accounts became overdrawn. To remedy the insufficient funds, Respondent then transferred monies back and forth between the trust and operating accounts. Respondent's failure to keep an overall ledger for his trust account also resulted in his inability to promptly or quickly provide White with an accounting of all advanced funds when it was first requested. Although Respondent sought his father's assistance in providing the accounting to White *prior to the filing* of the bar grievance, Respondent's lack of overall record keeping made it a difficult and lengthy task.

¶ 9 On October 7, 1998, the office of the General Counsel of the Oklahoma Bar Association (Complainant) received a written grievance from White alleging that Respondent had "willfully failed and refused to account ... for the monies he received." White estimated that Respondent owed him $2,914.45.

¶ 10 When Complainant attempted to inform Respondent that a formal investigation had been opened, the letter, sent to his roster address, was returned indicating that Respondent no longer resided there. Confusion concerning Respondent's correct roster address and his failure to notify Complainant of changes in his address resulted in his failure, initially, to timely respond to Complainant's requests. When he responded, his calculation of what he owed White was $2,124.38. Respondent's calculation was very near the amount that Respondent and White ultimately agreed was owed. That amount was satisfied on June 17, 1999.

¶ 11 In July, 1998, Respondent was suspended for failure to pay his 1998 Bar Association dues. In July, 1999, he was suspended for his failure to satisfy mandatory continuing legal education requirements for 1998. He was reinstated in August, 1999.

¶ 12 On July 13, 1999, the Complaint against Respondent was forwarded to this Court. A hearing was held in November, 1999, before a trial panel of the Professional Responsibility Tribunal. At that hearing, stipulations of fact, the sworn testimony of Respondent and his father, conclusions of law, and mitigating circumstances were submitted by the parties, accepted, and admitted into the record. In their stipulations, the parties agreed that Respondent violated the mandatory provisions of Rules 1.3 (committing acts contrary to proscribed standards of conduct) and 5.2 (failing to timely respond and provide a full and fair disclosure to the

Bar Association) of the Rules Governing Disciplinary Proceedings, Okla Stat. tit. 5, ch.1, app. 1–A., and Rule 5 1.15(a) (failing to hold a third person's property separate and failing to maintain complete records of such property), 1.15(b) (failing to promptly deliver property or an accounting upon demand), 8.1(b) (failing to properly respond to the Bar Association), and 8.4(a) (violating a Rule of Professional Conduct) of the Oklahoma Rules of Professional Conduct, Okla Stat. tit. 5, ch.1, app. 3–A.

¶ 13 The parties stipulated to the following mitigating circumstances:

1. Although Respondent was temporarily suspended for nonpayment of Bar Association Dues and noncompliance with MCLE, Respondent has no previous history of violations of the Rules Governing Disciplinary Proceedings or the Oklahoma Rules of Professional Conduct.

2. Prior to White's filing his grievance with the Complainant, Respondent actively solicited and secured the assistance of his father, Roger Abbott II, who is also an attorney, in correcting the mistakes he had made in handling White's funds.

3. No client funds are or were involved in this matter at any time.

4. At all material times, Respondent was clinically depressed and diagnosed as such by the medical doctor from whom Respondent sought treatment. Respondent's medical treatment was discontinued, however, when he was no longer able to afford it following May of 1998.

5. Respondent would testify that he is currently not engaged in the practice of law and that his clinical depression is under control at this time.

6. Respondent's misconduct appears to be based upon his negligent mishandling of trust account funds and not as the result of any wilful or intentional misuse or misconduct.

7. Respondent, upon review of the requirements of the Oklahoma Rules of Professional Conduct and the Rules Governing Disciplinary Proceedings, has accepted responsibility for his professional misconduct and has shown remorse for his negligent mishandling of funds entrusted to him.

8. Respondent is willing, should he resume the private practice of law, to continue to seek the advice and assistance of his father or any other mentor deemed necessary by the Oklahoma Supreme Court, including the assistance of the Law Office Management Program at his own expense.

¶ 14 The trial panel recommended "that public censure is an appropriate discipline to be imposed in this case based upon Respondent's negligent, as opposed to intentional, mishandling of funds and due to Respondent's physical and mental condition at the time these events took place." The parties have filed a joint brief in support of that recommendation.

¶ 15 The allegations of professional misconduct are uncontested in this matter as demonstrated by the stipulations of the parties. In-court stipulations are "solemn admissions" which are "generally binding and conclusive upon the parties as well as on the courts." *State of Oklahoma ex rel. Oklahoma Bar Ass'n v. Livshee*, 870 P.2d 770, 774 (Okla.1994). This Court's *de novo* review of the record reveals that the stipulations are in accord with that record and with the applicable law. *See id.* The only question remaining is the appropriate disciplinary sanction to be imposed.

¶ 16 The discipline imposed by this Court for commingling personal funds with a trust account has varied from public censure to disbarment, depending upon the degree of harm caused to a client. *State of Oklahoma ex rel. Oklahoma Bar Ass'n v. Briggs*, 1999 OK 76, ¶ 17, 990 P.2d 869, 873; *State of Oklahoma ex rel. Oklahoma Bar Ass'n v. McManus*, 852 P.2d 727, 728 (Okla.1993). Where, as here, no client funds were involved, no client was financially harmed, and no case was prejudiced by the lawyer's conduct, public censure is the appropriate discipline. That sanction was recently imposed for a lawyer's negligent mishandling of a third party's property and his failure to timely respond to the Bar Association's inquiry. *See Briggs*, 990 P.2d at 875. The misconduct in this case resulted from Respondent's negligence, as opposed to a deliberate attempt to mishandle funds entrusted to him by a third

party. In light of the fact that Respondent suffered from depression during the time in question, has acknowledged wrong doing and shown remorse, and due to the lack of harm caused to any client and full restitution being made, the imposition of a public censure is within the range of discipline imposed by this Court in previous cases involving similar circumstances.

¶17 Respondent is publicly censured and ordered to pay costs in the amount of $695.59 within ninety days from the date this opinion becomes final.

¶18 RESPONDENT PUBLICLY CENSURED AND ASSESSED COSTS OF THESE PROCEEDINGS.

¶19 All Justices Concur.