2004 OK 28

**STATE of Oklahoma, ex rel. OKLA-
HOMA BAR ASSOCIATION,
Complainant,**

v.

**SANDRA W. KRUG, Respondent.**

No. SCBD 4733.

Supreme Court of Oklahoma.

April 13, 2004.

Rehearing Denied June 21, 2004.

Loraine Dillinder Farabow, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, OK, for Complainant.

Jack S. Dawson, Miller Dollarhide, Oklahoma City, OK, for Respondent.

BOUDREAU, J.

¶ 1 The Oklahoma Bar Association (OBA) filed a Complaint against Sandra W. Krug (Respondent) under Rule 6, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A, charging her in Count I with making a false statement of fact and offering false evidence to a tribunal, and in Count II with failing to fully respond to the General

Counsel's notification that he was investigating allegations of her misconduct.[1] The parties stipulated to the facts and that Respondent engaged in misconduct. The PRT held a hearing, found misconduct on both Counts, recommended a 30–day suspension and one year probation, and further recommended that if Respondent commits an ethical violation within the probation period, the suspension for the instant offenses be extended to one year. The OBA and Respondent stipulated to a public reprimand and one year probation. We exonerate Respondent on both Counts and deny the OBA's application for costs.

## I. STANDARD OF REVIEW

¶2 We review the entire record *de novo* to determine if the OBA proved its allegations of misconduct by clear and convincing evidence. RGDP Rule 6.12(c). Even when the parties stipulate to misconduct the stipulations do not bind us because our duty is to review the evidence *de novo*. *OBA v. Taylor*, 2003 OK 56, ¶2, 71 P.3d 18, 21.

## II. FACTS

¶3 Upon our *de novo* review of the record we find the following facts. Respondent initiated probate proceedings as attorney for the estate of Callie Ann Robinson (the deceased). While the probate matter was pending, Respondent filed a related Forcible Entry and Detainer (FED) action to evict Barbara J. Brown (Brown) and Basil Mack because they refused to vacate a house owned by the deceased. Brown defended her possession of the house by contending she inherited it from the deceased. She presented an affidavit allegedly signed by the deceased and asserted that it was the deceased's last Will wherein Brown inherited the deceased's entire estate. Judge James B. Croy, who was presiding over the FED matter, declined to rule on the validity of the affidavit as a Will and instead instructed Respondent to seek a ruling from Judge Carol Ann Hubbard, who was presiding over the related probate matter. Respondent hired a certified handwriting examiner to review the signature on the affidavit and the signatures on additional documents that she suspected Brown had forged (including numerous bank checks, a will, a joint tenancy deed, at least five credit card applications, gas and electric utility applications, an insurance policy and direct deposit applications for the deceased's social security and pension checks).

¶4 In anticipation of Judge Hubbard's ruling, Respondent prepared an order and made several copies of it, as is common practice in Oklahoma County District Court. The order consisted of one page and two lines on the second page followed by signature blocks. It included language finding that the signature on the affidavit was forged as well as language that the affidavit did not satisfy the execution requirements for a valid Will.

¶5 After notice to all parties, Judge Hubbard reviewed the affidavit in chambers in Respondent's presence and determined the affidavit did not satisfy the execution requirements for a valid Will. Because this determination was sufficient to resolve the issue, Judge Hubbard did not reach the question of forgery. She struck through the language of the order that concerned forgery, wrote her initials on the changes and signed the order. Judge Hubbard told Respondent that she should have known the affidavit was not a valid Will, that she wasted estate funds by hiring a document examiner, and that she, Judge Hubbard, would not allow such conduct. Immediately thereafter, Respondent took the original order and the previously made copies to the Court Clerk's office for filing and asked the clerk to certify the copies. Neither Respondent nor the clerk conformed the copies to the original order.

¶6 Approximately five months later, Respondent applied for fees and costs in the FED matter. She stated in the application that she had rendered "extraordinary services" and detailed those services as follows:

---

1. The OBA alleges Respondent violated certain rules of the Rules Governing Disciplinary Proceedings (RGDP), 5 O.S.2001, Ch. 1, App. 1–A, and certain rules of the Oklahoma Rules of Professional Conduct (ORPC), 5 O.S.2001, Ch. 1, App. 3–A. In this opinion we cite to these rules as RGDP Rule—or ORPC Rule—.

that she has had to make five court appearances relating to the removal of [Barbara Brown and Basil Mack] from the home; that defendant Mack defaulted; that defendant Brown presented as evidence a forged document entitled *Affidavit of Callie A. Robinson* in an attempt to persuade this court that Brown was entitled to the entire Robinson estate and was therefore entitled to remain in the Robinson home; that this matter was held in abeyance until this attorney filed the questioned Affidavit with the probate court for the purpose of having it interpreted as to its authenticity and validity; that she had to employ a professional document examiner to have the questioned document examined; that said professional expert charges $500.00; that but for defendant Brown said extraordinary costs and fees would not have been necessary.

Respondent attached two exhibits in support of the application. The first exhibit was an itemized statement showing $2,175 in fees (which included $150 for one hour spent with the document examiner) and $631.88 in costs (which included $500 for the document examiner's fee). The second exhibit was one of the non-conformed copies of the order Judge Hubbard had entered in the probate matter. About three weeks later, Judge Croy ruled on Respondent's application. Judge Croy did not award the requested $500 for the document examiner. Of the requested $631.88 in costs, he awarded zero. It is not clear whether he awarded $150 for the time Respondent spent with the document examiner. Of the requested $2,175 in fees, he awarded $1,320.

¶7 On November 6, 2000, approximately eight months after Respondent had applied for fees·in the FED matter, she filed her third interim application for fees in the probate matter.[2] Judge Hubbard became concerned about the total amount of fees requested, pulled the related FED court file and saw the non-conformed copy of her probate order that was attached to Respondent's FED fee application. On January 12, 2001, Judge Hubbard *sua sponte* vacated her first two interim fee awards, denied Respondent's third interim fee application, awarded Respondent the total sum of $5,000 for fees and costs, and ordered Respondent to refund all the previous fees awarded in excess of $5,000.[3]

¶8 One month later, on February 11, 2001, the OBA General Counsel wrote his first letter to Respondent. The letter said:

Pursuant to [RGDP Rule 5.1], I am opening an investigation into the facts and circumstances surrounding allegations that you filed a certified copy of an Order with an Application before another judge when the Order was not the Order that was filed in the previous case.

Enclosed is a copy of the document that constitutes the basis of this grievance. This instrument, in my opinion, may indicate that you may have committed actions that would constitute a violation of the [ORPC], which is the standard of conduct for all attorneys in the State of Oklahoma.

Under the above-cited Rules, this matter will be presented to the Professional Responsibility Commission, along with any response you make in this matter, and the results of our independent investigation. The Commission will then decided what action, if any, to take in this matter.

---

2. On November 15, 1999, Judge Hubbard awarded interim fees and costs in the amounts of $7,770 and $720, respectively. On January 31, 2000, Judge Hubbard awarded interim fees and costs in the amounts of $9,255 and $558.34, respectively. Respondent's third interim application for fees and costs sought the amounts of $9,615 and $88.01, respectively.

3. Respondent appealed on the ground that Judge Hubbard did not have authority to vacate her previous two interim orders. The Court of Civil Appeals (COCA) affirmed Judge Hubbard's authority to review those interlocutory orders at any time prior to the entry of a final order, but remanded with instructions to award a reasonable fee, saying: "There is ample evidence in this record to suggest that Attorney's efforts on behalf of Estate may not have been adequately compensated by the trial court." COCA directed Judge Hubbard on remand to "afford Attorney the opportunity, in an evidentiary hearing, to present evidence of the type and amount of work done while engaged as Estate's attorney, and award a reasonable fee therefore." *In the Matter of the Estate of Callie Ann Robinson,* No. 95,848 (May 14, 2002) (unpublished opinion).

Our investigation will address, but is not limited to, alleged violation of [ORPC Rule 1.3].

According to [RGDP Rule 5.2], you are required to file a written response to this grievance *within twenty (20) days* from the date of this letter.

A copy of your response will be furnished to the complainant, if appropriate. No particular form is prescribed for responding to the grievance. Please include copies of any documents you have or statements of others that are relevant to the grievance so that this matter may be promptly concluded.

If you need additional time to respond, have questions regarding the procedure, or simply wish to talk to an attorney about your grievance, please contact our office. If you choose to respond to us by facsimile, we request that you also timely send your original letter to us.

(emphasis in original). Respondent and General Counsel exchanged several letters during the next thirty days.[4] The letters took the general form of Respondent repeatedly asking General Counsel who "brought this matter to your attention" and of General Counsel refusing to tell her. Unsatisfied with Respondent's response, on March 27, 2002, General Counsel took Respondent's deposition pursuant to subpoena.[5] The OBA filed its Complaint on June 28, 2002, and the PRT conducted its hearing on January 30, 2003. Respondent was the only witness at the PRT hearing. She and the OBA jointly introduced forty-one exhibits, stipulated to the facts and stipulated that Respondent engaged in misconduct.

## III. COUNT I

¶ 9 In Count I the OBA alleges Respondent violated ORPC Rules 3.3(a)(1), 3.3(a)(4), 8.4(a) and 8.4(c), and RGDP Rule 1.3.[6] The OBA alleges Respondent violated these rules by attaching one of the non-conformed copies of the order Judge Hubbard had entered in the probate matter to the FED fee application.

¶ 10 The resolution of Count I depends on whether Respondent's conduct was done knowingly. The PRT found that Respondent's conduct constituted a knowing false statement of fact to a tribunal because one *could* interpret Respondent's act as an effort to recover the handwriting examiner's fee as a cost in the FED matter. The PRT also concluded that "regardless of whether [Respondent] intended to deceive Judge Croy," her mere act of attaching the non-conformed order constituted a violation of Rule 3.3(a), citing *State ex rel. OBA v. Johnston*, 1993 OK 91, 863 P.2d 1136.

¶ 11 *Johnston* does not go as far as the PRT suggests. Although *Johnston* does say a "false statement to a tribunal ... requires no proof of bad or evil intent, nor must it be material," *id.* at 1143, it does not do away with ORPC Rule 3.3(a)'s requirement that the alleged act be done knowingly. In fact, the case cited by *Johnston* makes this clear. The cited case, *OBA v. McMillian*, 1989 OK

---

**4.** The letters are set out in the Appendix to this opinion. The Appendix also contains excerpts from Respondent's deposition.

**5.** The charges against Respondent grew with the passing of time. In General Counsel's first letter, he notified Respondent he was investigating a possible violation of ORPC Rule 1.3. Six weeks later, he notified her he was adding ORPC Rules 3.3(a)(1), 3.3(a)(4) and 8.4(c). By the time he filed the Complaint, he had added RGDP Rule 5.2 and ORPC Rules 8.1(b) and 8.4(a).

**6.** ORPC Rule 3.3(a)(1) and (a)(4) provide in pertinent part:

A lawyer shall not knowingly: (1) make a false statement of fact or law to a tribunal; ... or (4) offer evidence that the lawyer knows to be false ...

ORPC Rule 8.4(a) provides in pertinent part:

It is professional misconduct for a lawyer to ... violate or attempt to violate the Rules of Professional Conduct.

ORPC Rule 8.4(c) provides in pertinent part:

It is professional misconduct for a lawyer to ... engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

At the beginning of the PRT hearing the OBA withdrew its allegation that Respondent violated ORPC Rule 8.4(c).

RGDP Rule 1.3 provides in pertinent part:

The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of [the lawyer's] professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action. . . .

16, 770 P.2d 892, expressly reaffirms the requirement that the alleged act be done knowingly: "As long as the lawyer has *actual knowledge* of a false statement of fact or law, no inquiry need be made as to his [or her] motivation for making the false statement to show a rule violation." *McMillian,* 770 P.2d at 899 (emphasis added).[7]

■ ¶ 12 For purposes of ORPC Rule 3.3(a), knowingly means "actual knowledge of the fact in question. A person's knowledge may be inferred from circumstances." 5 O.S. 2001, Ch. 1, App. 3 A (Terminology). Thus, to prevail on Count I of its Complaint in this matter, the OBA must prove more than the fact that Respondent physically "attached" (*i.e.,* stapled) a copy of the non-conformed order to her fee application. Rather, the OBA must prove Respondent had actual knowledge she was making a false statement of fact to Judge Croy, *i.e.,* that the order she attached to her fee application was a non-conformed copy of the original.

¶ 13 Despite the PRT's conclusion that Respondent violated ORPC Rule 3.3(a), it acknowledged in its Report: "It is not certain whether [Respondent's] use of the erroneous order in her fee application was intentional or an oversight." In other words, the panel itself questioned whether the Respondent's conduct was done with actual knowledge. Our *de novo* review of the evidence leads us to the same question. At the hearing, Respondent testified that she did not realize the copy of the order she attached to her fee application was non-conformed until Judge Hubbard pointed it out to her. While there is evidence in the record from which one could infer Respondent's conduct was knowingly done, we find that such evidence does not rise to the clear and convincing level required in a bar discipline proceeding. Accordingly, we find that the OBA failed to prove Respondent violated ORPC Rules 3.3(a)(1), 3.3(a)(4), 8.4(a), and RGDP Rule 1.3 and we exonerate Respondent on Count I.[8]

## IV. COUNT II

¶ 14 In Count II the OBA alleges Respondent violated ORPC Rules 8.1(b) and 8.4(a), and RGDP Rules 1.3 and 5.2.[9] The OBA

---

**7.** *McMillian* construed the then-effective DR–7–102(A)(5), Code of Professional Responsibility, 5 O.S.1981, Ch 1, App. 3, which is virtually identical to the now effective Rule 3.3(a)(1).

**8.** We acknowledge Respondent stipulated that she violated ORPC Rule 3.3(a) but we reject her stipulation because the record does not support it. *See State ex rel. OBA v. Carpenter,* 1993 OK 86, 863 P.2d 1123, 1131–32 (stipulations not binding on *de novo* review by the court); *State ex rel OBA v. Livshee,* 1994 OK 12, 870 P.2d 770, 774 (same). Respondent's stipulation was based on her erroneous assumption that the word knowingly as used in ORPC Rule 3.3(a) is defined by reference to our criminal statutes. It is not. In criminal proceedings, the word knowingly "imports only a knowledge that the facts exist which bring the act or omission within the provisions of [the criminal code]. *It does not require any knowledge of the unlawfulness of such act or omission."* 21 O.S.2001, § 96 (emphasis added). In bar disciplinary proceedings, however, the word knowingly means "actual knowledge of the fact in question." There is no clear and convincing evidence that Respondent actually knew she had attached a non-conformed copy of Judge Hubbard's order to the FED fee application.

**9.** ORPC Rule 8.1(b) provides in pertinent part:
[A] lawyer in connection ... with a disciplinary matter, shall not ... knowingly fail to respond to a lawful demand for information from ... a disciplinary authority, except that this rule does not require disclosure of information otherwise protected by Rule 1.6.
For text of ORPC Rule 8.4(a), *see* footnote 6, *supra.*
For text of RGDP Rule 1.3, *see* footnote 6, *supra.*
RGDP Rule 5.2 provides:
After making such preliminary investigation as the General Counsel may deem appropriate, the General Counsel shall either (1) notify the person filing the grievance and the lawyer that the allegations of the grievance are inadequate, incomplete' or insufficient to warrant the further attention of the Commission, provided that such action shall be reported to the Commission at its next meeting, or (2) file and serve a copy of the grievance (or, in the case of an investigation instituted on the part of the General Counsel or the Commission without the filing of a signed grievance, a recital of the relevant facts or allegations) upon the lawyer, who shall thereafter make a written response which contains a full and fair disclosure of all the facts and circumstances pertaining to the respondent lawyer's alleged misconduct unless the respondent's refusal to do so is predicated upon expressed constitutional grounds. Deliberate misrepresentation in such response shall itself be grounds for discipline. The failure of a lawyer to answer within twenty (20) days after service of the grievance (or recital of facts or allegations), or such further time as may be

alleges Respondent violated these rules by failing to provide a full and fair response to General Counsel's notification that her conduct was being investigated. According to the OBA, Respondent's February 12, March 5, and March 11, 2002, written responses to General Counsel's letters fell short of the "full and fair disclosure" required by the rules. The three letters read as follows:

### Letter dated 2/12/02, from Respondent to General Counsel:

I notice this grievance is brought in your name.

Please inform me of who is responsible for this complaint, who brought this matter to your attention, who is behind this, who is the complainant?

### Letter dated 3/05/02, from Respondent to General Counsel:

Mr. Murdock—You are giving me the impression that you are showing favoritism or are attempting a cover-up. Certainly you don't think you would need to hide information from me in an attempt [to] protect someone from retaliation by me. Why are you keeping this information from me? Why are you withholding information? If no one else but you is complaining then tell me how the information came to you. Please set forth all the facts.

You state no one is accusing me of anything and then set forth violations of [RGDP Rule 1.3], to which you now add rule 3.3(a)(1) and (4) and rule 8.4(c).

Your last correspondence was dated March 1st, but I did not receive it until today. Obviously I will not be able to comply with the response date of March 11th. And why are you setting such short response dates?

Additionally, the issues set forth in all my correspondence do not appear to be satisfactorily resolved. Therefore, I request a reasonable amount of additional time.

I do not want to engage in a power struggle with you. I just want full disclosure.

granted by the General Counsel, shall be grounds for discipline. The General Counsel shall make such further investigation of the

### Letter dated 3/11/02, from Respondent to General Counsel:

I have received correspondence from Tony Blasier with a partial response to the issues I raised with you. He denies that you are showing favoritism to anyone in this matter but fails to deny that you are covering-up for someone. For the most part the issues I have raised are still not being addressed.

As a basis for grievance against me you sent me a packet of pleadings from one of my cases. You did not come by this information on your own. You are evasive and are apparently covering up for someone for whom you deny showing favoritism. This in my opinion is unconscionable, and I question the ethics of it, as well as the constitutionality of it. I think you are stretching the rules in your favor while tightening the screws on me each time I respond.

The rules call for an initial response time of 20 days from the date of receipt of the grievance, but you mandated 20 days from the date of the letter. Time extensions are discretionary under the rules, but you allowed one 10 day extension with a direction to meet that deadline. I can only assume that means you will proceed to saddle me with another grievance. And I wonder why time is of the essence here.

I am concerned that this grievance may be an attempt to gain tactical advantage of me in another case. But I do not know because you refuse to disclose information when there is no logical reasons to withhold it, and in my opinion, in this matter, this is a stretch of the "Rules", and unconstitutional.

I have responded several times to your grievance letter. And I have raised issues to which you have not responded. As to the accusation pertaining to the certified copies of Orders, I do not know the answer. Perhaps the court clerk made a mistake which is not uncommon.

grievance and response as the General Counsel may deem appropriate before taking any action.

I await your response as to the identify of the person responsible for supplying you with the pleadings.

¶ 15 At first glance, the resolution of Count II seems to call for a review of these letters to determine if they provide a full and fair disclosure of the facts pertaining to Respondent's alleged misconduct. Under the unusual facts of this case, however, we will first determine what is required of the General Counsel under RGDP Rules 5.1 and 5.2.

¶ 16 RGDP Rule 5.1(a) authorizes allegations of misconduct to be brought to General Counsel's attention either in a "written, signed grievance" or "in any [other] manner whatsoever." Under either circumstance, General Counsel then conducts a preliminary investigation to determine if further action is warranted.[10]

¶ 17 RGDP Rule 5.2 sets out the procedure when General Counsel determines further action is warranted. The procedure varies depending on whether the allegation of misconduct came to the General Counsel in a written, signed grievance or in some other manner. If the allegations came in a written, signed grievance, General Counsel must file and serve a copy of "the grievance" upon the lawyer. The copy of the grievance will, of course, reveal not only the basis for the alleged misconduct but also the identity of the person who submitted the grievance. If the allegations came in some other manner, General Counsel must file and serve a "recital of relevant facts or allegations" upon the lawyer. RGDP Rule 5.2 does not specify whether this recital must include the identity of the person who made the allegations.

¶ 18 Although RGDP Rule 5.2 does not specify the contents of the recital, we conclude that the identity of the person who made the allegations of misconduct is a relevant fact that the General Counsel must include in the recital to the accused lawyer under Rule 5.2. In our view, the identity of the complaining person in an attorney discipline matter is a relevant fact because it may help shape the lawyer's response. In addition, we can discern no reason why a lawyer whose conduct has been reported to General Counsel in an informal way should be treated differently in this regard than a lawyer whose conduct has been reported by way of a written, signed grievance.

¶ 19 Having concluded that the recital provided by General Counsel must include the identity of the complaining person, we apply this conclusion to the facts of this case. The record reveals that despite Respondent's repeated requests for the identity of the complaining person, General Counsel never revealed this information to her, either in his initial recital, in his subsequent letters, or in his deposition of Respondent. Without this information, Respondent did not have all the "relevant facts or allegations" at her disposal.

¶ 20 This is not a case in which Respondent wholly failed to respond to the General Counsel's notification that her conduct was being investigated. Rather, her February 12, March 5 and March 11, 2002, letters were attempts to secure relevant information necessary to fully respond. Because Respondent maintained communication with General Counsel and requested information to which she is entitled, we conclude the OBA failed to prove Respondent violated ORPC Rules 8.1(b) and 8.4(a), and RGDP Rules 1.3 and 5.2.[11]

10. If General Counsel determines no further action is warranted upon a written, signed grievance, General Counsel must notify both the lawyer and the person filing the grievance that "the allegations of the grievance are inadequate, incomplete, or insufficient to warrant the further attention of the Commission." RGDP Rule 5.2.

11. Although we exonerate Respondent on Count II, we nevertheless want to point out that her responses were consistent concerning how it happened that she wound up with non-conformed certified copies of the original order. Her consistent response was that she did not know, as the following excerpts show:

3/11/02 letter from Respondent to General Counsel: "As to the accusation pertaining to the certified copies of Orders, I do not know the answer. Perhaps the court clerk made a mistake which is not uncommon."

3/27/02 deposition: "A: Pertaining to the certified copies of orders, I do not know the answer. That is my response, I do not know. I do not understand. The court clerk perhaps made a mistake. That is my answer."

1/30/03 hearing, page 21: "Q: Do you how that happened? A: I do not. I didn't know it had happened."

1/30/03 hearing, page 28: "I did respond on the deadline.... What I said was, 'I do not know

## V. CONCLUSION

¶ 21 We exonerate Respondent on Count I because the OBA failed to prove by clear and convincing evidence that Respondent knowingly made a false statement of fact or knowingly offered evidence that she knew to be false to a tribunal. We also exonerate Respondent on Count II. Since General Counsel never revealed to Respondent the identity of the person who made the informal report of misconduct, and since he has a duty to reveal that information, Respondent's February 12, March 5 and March 11, 2002, letters to General Counsel did not violate RGDP Rule 5.2. Finally, because we exonerate Respondent on both Counts, we deny the OBA's application for costs.

**RESPONDENT EXONERATED;
OBA'S APPLICATION FOR
COSTS DENIED.**

WATT, C.J., HODGES, LAVENDER, HARGRAVE, KAUGER and EDMONDSON, JJ., concur.

OPALA, V.C.J and WINCHESTER, J., dissent.

## APPENDIX

**Letter dated 2/11/02, from General Counsel to Respondent:**

Pursuant to [RGDP Rule 5.1], I am opening an investigation into the facts and circumstances surrounding allegations that you filed a certified copy of an Order with an Application before another judge when the Order was not the Order that was filed in the previous case.

Enclosed is a copy of the document that constitutes the basis of this grievance. This instrument, in my opinion, may indicate that you may have committed actions that would

the answer' to your questions. I do not know how this happened."

1/30/03 hearing, page 31: "Q: Do you still, today, do you know how the mistake was made? A: I don't know how the mistake was made."

1/30/03 hearing, page 58: "Q: When you read your copy of the deposition, do you believe you answered Mr. Murdock's questions fully and fairly? A: To the best of my ability at the time. I did not know what happened. I still don't know what happened."

constitute a violation of the [ORPC], which is the standard of conduct for all attorneys in the State of Oklahoma.

Under the above-cited Rules, this matter will be presented to the Professional Responsibility Commission, along with any response you make in this matter, and the results of our independent investigation. The Commission will then decided what action, if any, to take in this matter.

Our investigation will address, but is not limited to, alleged violation of [ORPC Rule 1.3].

According to [RGDP Rule 5.2], you are required to file a written response to this grievance *within twenty (20) days* from the date of this letter.

A copy of your response will be furnished to the complainant, if appropriate. No particular form is prescribed for responding to the grievance. Please include copies of any documents you have or statements of others that are relevant to the grievance so that this matter may be promptly concluded.

If you need additional time to respond, have questions regarding the procedure, or simply wish to talk to an attorney about your grievance, please contact our office. If you choose to respond to us by facsimile, we request that you also timely send your original letter to us.

**Letter dated 2/12/02, from Respondent to General Counsel:**

I notice this grievance is brought in your name.

Please inform me of who is responsible for this complaint, who brought this matter to your attention, who is behind this, who is the complainant?

1/30/03 hearing, page 71: "A: The technical issue, my answer is I don't know what happened. They wanted additional information as to Judge Hubbard's testimony. I don't know how it happened. Q: And so, really, the technical issue is you don't know, it just happened. A: That's right. I don't know what happened."

1/30/03 hearing, page 115: "A: I could have filled in more detail, but my answer is I don't know what happened. The Bar wanted more than that."

**Letter dated 2/19/02, from General Counsel to Respondent:**

I am in receipt of your fax dated February 12, 2002.

[RGDP Rule 5.1] provides that the General Counsel or the Professional Responsibility Commission of the [OBA] may institute an investigation based on information brought to their attention in any manner whatsoever.

The above-referenced grievance was opened based on information brought to my attention. No other information will be provided. You are again requested to respond to the grievance as directed by my letter dated February 11, 2002.

**Letter dated 2/28/02, from Respondent to General Counsel:**

I received your February 19th letter. But, it was not responsive to my February 12th question of who is trying to get me in trouble. Therefore, I present the following issues:

1. I am not able to find anywhere in the rules where it is said the complainant may be kept secret. And it is my understanding the Constitution does not permit this. Where is it written that I have no right to know who my accuser is? As I read [RGDP Rule 5.1], which you cite, it provides that you may conduct an investigation based upon facts and allegations brought to you in any manner, meaning they do not have to be given to you in writing. But where is the rule or law that provides that my accuser can remain concealed?

2. Your February 11th letter states a copy of my response will be furnished to the complainant. But your position is that I cannot know who that complainant is. At the same time you are demanding full disclosure from me. Where is the fairness here? I can not reasonably respond until I know what this is really about, and who is doing this.

3. I am not clear what Rule of Professional Conduct you are accusing me of violating. Is it Rule 1.3, Diligence?

4. Therefore, I respectfully request sufficient additional time to respond until these issues are satisfactorily resolved.

**Letter dated 3/1/02, from General Counsel to Respondent:**

I am in receipt of your fax dated February 28, 2002. My letter of February 19, 2002 was responsive to the issues raised in your previous letter, but I further respond to the numbered issues raised in your letter of February 19, 2002[sic] as follows:

1. No one is accusing you of anything. I am investigating a matter pursuant to the [RGDP]. You may consider me the complainant.

2. I am the complainant. Please review the first paragraph of my letter dated February 11, 2002 to know what this is all about.

3. The possible rule violation is [RGDP Rule 1.3]. However, after further review, I am also directing your attention to Rules 3.3(a)(1) and (4) and 8.4(c). Copies of those rules are enclosed.

These matters are satisfactorily resolved. I will expect your response by March 11, 2002.

**Letter dated 3/05/02, from Respondent to General Counsel:**

Mr. Murdock—You are giving me the impression that you are showing favoritism or are attempting a cover-up. Certainly you don't think you would need to hide information from me in an attempt [to] protect someone from retaliation by me. Why are you keeping this information from me? Why are you withholding information? If no one else but you is complaining then tell me how the information came to you. Please set forth all the facts.

You state no one is accusing me of anything and then set forth violations of [RGDP Rule 1.3], to which you now add rule 3.3(a)(1) and (4) and rule 8.4(c).

Your last correspondence was dated March 1st, but I did not receive it until today. Obviously I will not be able to comply with the response date of March 11th. And why are you setting such short response dates?

Additionally, the issues set forth in all my correspondence do not appear to be satisfactorily resolved. Therefore, I request a reasonable amount of additional time.

I do not want to engage in a power struggle with you. I just want full disclosure.

**Letter dated 3/06/02, from Tony Blasier, Investigator, to Respondent:**

I am the investigator assigned to the above-referenced grievance. I have seen the several pieces of correspondence you have submitted and Dan Murdock's responses to said correspondence.

No one is being shown favoritism. The General Counsel's office and Mr. Murdock have acted in accordance with the [RGDP]. You have been supplied a copy of the documents which formed the basis of the grievance, a list of the rules that **may** have been violated, and our written notification of your obligation to respond. If we didn't insist that you timely respond to the grievance as required by the [RGDP] then this office would be showing you favoritism.

In regards to you allegation that we are setting short response dates, that is not the case. The [RGDP] requires your response within twenty days of the date you receive a copy of the grievance. You requested an extension and one was granted. Our initial letter, advising you of the grievance, was mailed on February 11, 2002. You received that letter on February 12, 2002. Twenty days from February 12 would have made your response due by no later than March 4, 2002. By letter dated February 28, 2002, you requested an extension of time and on March 1, 2002, you were mailed a letter notifying you that your response time had been extended to March 11, 2002.

In summary, you have been provided with everything the [RGDP] requires. You are again directed to submit a response which complies with [RGDP Rule 5.2] on or before March 11, 2002.

**Letter dated 3/11/02, from Respondent to General Counsel:**

I have received correspondence from Tony Blasier with a partial response to the issues I raised with you. He denies that you are showing favoritism to anyone in this matter but fails to deny that you are covering-up for someone. For the most part the issues I have raised are still not being addressed.

As a basis for grievance against me you sent me a packet of pleadings from one of my cases. You did not come by this information on your own. You are evasive and are apparently covering up for someone for whom you deny showing favoritism. This in my opinion is unconscionable, and I question the ethics of it, as well as the constitutionality of it. I think you are stretching the rules in your favor while tightening the screws on me each time I respond.

The rules call for an initial response time of 20 days from the date of receipt of the grievance, but you mandated 20 days from the date of the letter. Time extensions are discretionary under the rules, but you allowed one 10 day extension with a direction to meet that deadline. I can only assume that means you will proceed to saddle me with another grievance. And I wonder why time is of the essence here.

I am concerned that this grievance may be an attempt to gain tactical advantage of me in another case. But I do not know because you refuse to disclose information when there is no logical reasons to withhold it, and in my opinion, in this matter, this is a stretch of the "Rules", and unconstitutional.

I have responded several times to your grievance letter. And I have raised issues to which you have not responded. As to the accusation pertaining to the certified copies of Orders, I do not know the answer. Perhaps the court clerk made a mistake which is not uncommon.

I await your response as to the identify of the person responsible for supplying you with the pleadings.

**Subpoena issued 3/14/02.** Thereafter, on March 14, 2002, the OBA applied for and was issued a subpoena duces tecum directing Respondent to testify before the Professional

Responsibility Commission on March 27, 2002. The subpoena, together with copies of the parties' correspondence (which were attached to the subpoena as Exhibits A–H), was served on Respondent March 15, 2002, by private process server.

**Letter dated 3/18/02. On March 18, 2002, Respondent wrote to General Counsel:**

Please explain why you caused a subpoena to issue?

Please tell me the identity of the person who brought this matter to your attention?

**Deposition taken 3/27/02.** On March 27, 2002, General Counsel Dan Murdock took the deposition of Respondent. In this deposition, Murdock reviewed the correspondence exchanged between the OBA and Respondent from 2/11/02 through 3/11/02 (*i.e.*, exhibits A–H that were attached to the subpoena). Respondent stipulated to the correspondence. When Murdock asked if Respondent had ever "responded" to the "grievance," Respondent said: "Pertaining to the certified copies of orders, I do not know the answer. That is my response, I do not know. I do not understand. The court clerk perhaps made a mistake. That is my answer, and I still don't know who is behind this grievance or how this all came about." When Murdock began asking about the pleadings and papers that Respondent filed in the FED matter, Respondent stipulated to the contents of the court clerk's file. She also acknowledged that the copy of the order she attached to her fee application in the FED matter was not conformed to the original order signed by Judge Hubbard in the probate matter. When Murdock asked why it was not conformed, Respondent said: "I can't explain it, I cannot explain it. Unless the court clerk has made a mistake. I will admit to filing the document. I will stipulate to everything in the file, those things—every court pleading you have there. As far as what happened here, I really cannot explain it." Murdock then asked: "So do you know or have any reason, other than it's the court clerk's

fault, that an incorrect order was filed in the case?" Respondent said: "I cannot explain it. It would be of absolutely no benefit to me to file it, to have it certified. It doesn't even need to be file stamped. It's doesn't even need to be presented to the judge. I could testify to the existence of it. If I wanted to do something wrong, I wouldn't risk my license on that. It's certainly not something—it wasn't necessary to the case. It's just not something that's important enough to screw up. That document wasn't important to the FED case. Not enough to falsify certification which is I think what I'm being accused of." Murdock responded: "No, I think the allegation is, is that during the course of the [FED] case you attached and filed a document to your application for attorney's fees that was not the correct document that Judge Hubbard had signed. That's all it is." Respondent said: "Well, when you take—All right. Okay. When you take a stack of copies of a document to the judge to be signed, you may have four or five copies, eight copies, three copies, two copies, whatever. The judge signs the top copy, then you go to the court clerk's office and you file them, and the court clerk certifies them and file stamps them or whatever it is they do to them, and occasionally they make mistakes. I don't know, I cannot explain this. I don't have the original of those things, I'm not the attorney in that case anymore, those files have been turned over to the other attorneys. I can't explain it. I don't know. It was not anything that was beneficial to me to do. It didn't help me at all. It didn't hurt anybody. It didn't even need to be filed. It didn't need to be done." Murdock then ended his deposition of Respondent.

OPALA V.C.J., with whom WINCHESTER, J., joins, dissenting.

¶1 Respondent's exoneration of disciplinary breach charged in both counts is plainly erroneous. **Firstly, *a lawyer's intent is wholly irrelevant in an inquiry* to** determine if there was a violation of ORPC 3.3(a)(1).[1] The court's reliance on "intent" is

1. Rule 3.3(a)(1) of the Oklahoma Rules of Professional Conduct (ORPC), 5 O.S.2001, Ch. 1, App. 3–A, provides: "A lawyer shall not knowingly make a false statement of fact or law to a tribunal."

hence misplaced.[2] **Secondly,** there is clear and convincing evidence [3] to support respondent's breach of Oklahoma Rules of Professional Conduct and of Rules Governing Disciplinary Proceedings.[4] **Thirdly,** the court's act of relieving respondent of the binding effect of her stipulation is, absent compelling equitable considerations, contrary to extant jurisprudence.

## COUNT I

## A LAWYER VIOLATES ORPC 3.3(a)(1) BY SUBMITTING TO A COURT A NON–CONFORMING COPY OF A JUDGE'S ORDER

¶ 2 By the terms of ORPC 3.3(a)(1) a lawyer is subject to discipline for *knowingly* presenting *any* false statement of fact or law to a court.[5] *Knowingly*—as used in the context of 3.3(a)(1)—means having actual knowledge that may be inferred from the circumstances.[6] *Whether respondent's submission of a non-conforming copy of the judge's order was intentional or a mere oversight is completely irrelevant.*[7] The mere *fact* that she filed a non-conforming order (subsequently attached to a fee application), along with her admission of liability by stipulation, establishes by clear and convincing evidence actual knowledge and a clear breach of 3.3(a)(1).*[8] Respondent stands in violation of her professional duty to exhibit candor and to provide truthful information to a tribunal. *She is hence subject to appropriate discipline.*[9]

¶ 3 Today's pronouncement disregards respondent's stipulation to her violation of ORPC 3.3(a)(1), although she never asked this court to be relieved of her solemn commitment to the admission. **Because her stipulation concedes the critical fact at issue, this court is now powerless, absent compelling equitable circumstances,[10]** to make sure that copies of pleadings that are submitted to the Court Clerk for filing and certification are identical to the original."

---

2. Although I concede that a lawyer's intent may be relevant in determining the extent of discipline to be imposed, I cannot accede to the court's consideration of intent as an element of violation of ORPC 3.3(a)(1).

3. The terms of Rule 6.12(c), 5 O.S.2001, Ch. 1, App. 1–A, in relevant part, provide:
"... to warrant a finding against the respondent in a contested case, the charge or charges must be established by **clear and convincing evidence.**" [emphasis supplied]

4. The Oklahoma Rules of Professional Conduct and the Rules Governing Disciplinary Proceedings are referred to as ORPC and RGDP, respectively.

5. *See supra* at note 1.

6. *See* ORPC (Terminology), 5, Ch. 1, App. 3–A, provides that "a person's knowledge may be inferred from circumstances." *See also Annotated Model Rules of Prof'l Conduct,* 2d ed., p. 11 (1992).

7. *See Oklahoma Bar Assoc. v. Johnston,* 1993 OK 91, 863 P.2d 1136, 1143 (1993), which holds that "a 'false statement' to a tribunal, as distinguished from a 'misrepresentation,' requires no proof of 'bad or evil intent,' nor must it be material."

8. *Id.* at 1144. A violation of ORPC 3.3(a)(1) is established by "any incorrect statement of law or fact made to a tribunal by a lawyer having actual knowledge of its falsity, *no matter how insignificant.*" The Trial Panel Report of the Professional Responsibility Tribunal (Page 4) states, "[t]he point is—it is the attorney's responsibility to

9. Insofar as it is consistent with the disciplinary rules, state law may be invoked as a supplemental source for application in bar disciplinary process. Constructive knowledge of the contents of the non-conforming text of the order stands **imputed** to respondent by force of the authority contained in the provisions of 12 O.S. Supp.2003 § 2011 and 25 O.S.1987 § 13.

The terms of 12 O.S. Supp.2003 § 2011, in relevant part, provide:
"Every pleading, motion, and other paper ... shall be signed by at least one attorney or record in his individual name.... **The signature of an attorney constitutes a certificate by him that he has read the pleading, motion, or other paper.**" [emphasis supplied]
The terms of 25 O.S.1987 § 13 provide:
"Every person **who has actual notice of circumstances** sufficient to put a prudent man upon inquiry as to a particular fact, and who omits to make such inquiry with reasonable diligence, **is deemed to have constructive notice of the fact itself.**" [emphasis supplied]

10. *See Okla. Bar Ass'n v. Abbott,* 2000 OK 64, 11 P.3d 1239, 1241 (2000); *Okla. Bar Ass'n v. Livshee,* 1994 OK 12, 870 P.2d 770, 774 (1994); *Bonner v. Okla. Rock Corp.,* 1993 OK 131, 863 P.2d 1176, 1181 (1993) (stipulations are solemn admissions and generally are binding and conclusive on the parties and on the court unless the court, upon request, finds tenable legal ground for relieving one from the legal effect of the

reject *sua sponte* the legal consequences of her admitted fact. Equitable circumstances are **totally absent** here.

¶ 4 Respondent failed to adduce the only proof that could refute her **implied** or **inferred** knowledge of the breach. That refutation called for invoking the defense of automatism.[11] The record is devoid of evidence indicating respondent was unconscious at the time of her wrongful submission of a nonconforming document.[12] Automatism is a defense distinct from that of insanity (where proof of mental disease or defect must be established). To prove an unconscious state, one's condition must be shown to have been beyond one's control and not the result of any voluntary act.[13] When questioned about her failure to file a conforming copy of the order, respondent, on several occasions, avoided giving the PRT a direct answer.[14]

## COUNT II

**RESPONDENT'S REFUSAL TO RESPOND TO THE BAR PROSECUTOR'S (GENERAL COUNSEL) INQUIRY VIOLATES ORPC 8.1(b) and 8.4(a), and RGDP 1.3 and 5.2.**

¶ 5 In the absence of any rule to the contrary, the Bar prosecutor is not required to reveal information pertaining to a grievance unless, of course, it would be critical to respondent's proof of her innocence.[15] *Respondent did not demonstrate any need to*

stipulation); *Jones v. Lee*, 1998 NMCA 008, 126 N.M. 467, 971 P.2d 858 (N.M.Ct.App.1998) ("the general rule is that stipulations are ordinarily binding on the parties absent fraud, mistake, improvidence, material change in circumstances, or unless equitable considerations require otherwise"); *Monasebian v. DuBois*, 293 N.Y.S.2d 27, 30 A.D.2d 839 (1968) ("[r]elief from stipulations will be granted based on general equitable considerations ... due to circumstances beyond the control of the parties").

11. The terms of 21 O.S.2001 § 152(6) provide: "All persons are capable of committing crimes, except those belonging to the following classes: Persons who committed the act charged without being conscious thereof."

12. *See Sellers v. State*, 1991 OK CR 41, 809 P.2d 676, 686 (1991); *Jones v. State*, 1982 OK CR 112, 648 P.2d 1251, 1258 (1982). For *automatism* to afford protection from accountability, the illegal act [or the actor's condition] must be the "result of [an] involuntary act which is completely beyond the individual's knowledge or control."

13. *See Sellers, supra* at 687 ("Examples of automatic conduct are blackouts and epileptic seizures").

14. Hearing before the PRT Page 37 (line 23)-Page 39 (line 5)

Q. You've read the stipulations that you've endorsed today, have you not?
A. Yes.
Q. Okay. And you read them with the advice of your attorney, did you not?
A. Yes.
Q. And have you actively engaged and worked on the drafting of these stipulations to their final format?
A. Yes.
Q. Okay. And you understand what the stipulations purport to the Court—
A. Yes.
Q. —and to the Trial Panel members, do you not?
A. Yes.
Q. And have you entered into these stipulations freely and voluntarily?
A. Yes.
Q. You understand that the PRT is not bound by the stipulations of fact or law.
A. Right
Q. You understand the PRT is not bound by the recommendation of discipline, correct?
A. I do.
Q. And you also understand that the Supreme Court is not bound by these stipulations?
A. Yes.
Q. The Supreme Court is not bound by the PRT's recommendation.
A. Yes.
Q. Okay. It's still your intention then to go ahead and enter into these stipulations today
A. Yes.
Q. —Is that correct?
A. Yes.

15. The terms of RGDP 5.1, 5, Ch. 1, App. 1 A provide:
"Each grievance or request for investigation ... involving a lawyer ... shall be in writing and signed by the person filing the same, *except* that the General Counsel ... may, in their discretion, institute an investigation on the basis of facts or allegations involving a lawyer ... brought to their attention in any manner whatsoever."
The terms of RGDP 5.2, 5, Ch. 1, App. 1–A provide:
"The failure of a lawyer to answer within twenty (20) days after service of the grievance (or recital of facts or allegations), or such further time as may be granted by the General Counsel, shall be grounds for discipline."

*know the identity of the complainant.* No nexus was shown between the identity of that person and respondent's submission of a flawed document. She should have pressed, by orderly process, for discovery of the complainant's identity rather than declining to reveal the information the Bar sought or providing misleading facts. In short, respondent could not insist on conditioning her cooperation upon the Bar prosecutor's willingness to identify the complainant. Respondent's recalcitrant attitude provides vivid proof of her utter disrespect for the law's orderly process. In sum, *her refusal to respond to the prosecutor's quest must be treated as a breach of professional discipline.*

## SUMMARY

¶ 6 Today's pronouncement *needlessly and in disregard of applicable law* delivers a mortal blow to the efficient operation of the Bar's prosecutorial service. The court *improperly* (a) *reads an element of intent into the language of ORPC 3.3(a)(1)* and (b) *relieves respondent—sua sponte and in the absence of compelling equitable considerations—of her solemn admission that she breached professional discipline.* The Bar's prosecutor is **wrongly** placed under duty to disclose the identity of a complainant when that **information stands utterly disconnected from a respondent's need for exculpatory proof.** *Sans* any legal warrant, a complainant is stripped today of the anonymity conferred by a time-honored rule of practice in the grievance process.[16] **I would impose the discipline recommended by the PRT.**

16. *See* Rule 12—Immunity, *American Bar Assoc.—Model Rules for Lawyer Disciplinary Enforcement* (1993) ("A policy of conferring absolute immunity on the complainant encourages those who have some doubt about a lawyer's conduct to submit the matter to the proper agency, where it may be examined and determined.

Without immunity, some valid complaints will not be filed. The individual lawyer may suffer some hardship as the result of the occasional filing of a malicious complaint, but a profession that wants to retain the power to police its own members must be prepared to make some sacrifice to that cause").